The next case on the calendar is Jones v. Target Corporation. Good morning, Your Honor. And to the bench, Lorraine Cortese-Costa for the appellant, Nicole Jones. The sum of this case is fairly simple. We had two supervisory employees at Target Corporation, one a lower-level manager and one a senior-level manager. Jumante White was the lower-level manager. He begins by harassing Ms. Jones. Ms. Jones complains to her upper-level manager, Mr. Vigliotti. Mr. White begins retaliating against her with disproportionate assignment of work and with other hostility based upon her gender and the fact that she made a complaint against him. Mr. Vigliotti doesn't take her complaints seriously. He does short shrift investigations. Ms. Jones complains of his failure to act. He discharges her several days later. In determining whether there is a case that should go to a jury on retaliation and or hostile working environment. Let me just say, the last thing you said, my understanding of the record is that she called that they found this video and raised it prior to her calling the integrity hotline. You said that she complained and then he fired her. But isn't the record the opposite? That the timing of the call was after this video regarding the marijuana issue had surfaced? She made several complaints prior to the marijuana incident. I know, but you're going back much further in time. In other words, in terms of the retaliation, if those prior instances were going to be the basis for retaliation, they recite a long list of counseling that went on for many, many months, I think a dozen separate counseling sessions, right, over time. She had been counseled for her performance. By not just Mr. White, by Ms. Pride, by numerous people, right? But that had absolutely nothing to do with the reason why they discharged her. No, that's what I'm suggesting. When you say she complained multiple times, the real basis for the retaliation, I thought, issue that you're claiming was this last call to the integrity hotline, no? That's certainly one of them and probably the key one with respect to With respect to that one, my question to you is let's assume that that would be the critical issue. Didn't it occur after they had already raised the issue of the video with respect to the marijuana issue? I believe it happened after the incident that they're claiming that she dropped marijuana. As far as the tape is concerned, she never saw it. So I don't think she has any basis for knowing which came first. But the record shows that they made, in terms of their mindset, that the marijuana issue was before the call to the hotline. I believe that is their argument, yes. How can that be a basis for retaliation then? I'm confused. If they believed it was marijuana and were already making a decision to terminate her and then she called the integrity hotline, how can we have an argument that the integrity hotline was the basis for their termination? I'm sorry, Your Honor. I misunderstood your question. No, our position is that she wasn't terminated until a week to 10 days after this marijuana incident. Yes, I believe that Mr. Vigliotti now claims that he made the decision with like a four-hour period of time and eventually his story ends up being before she called the hotline. But then there's countervailing evidence in the record from an unemployment hearing at which Mr. Vigliotti testified and at which he testified that it was a day or two later that he made the decision that he was going to terminate her. And if it was the two day later, it was definitely after she had made the complaint to the integrity hotline. And I think really you have to look at the, again, going back to the totality of the circumstances in this case really to understand it. Ms. Jones was hired in 2007 by Mr. Vigliotti. I don't have any complaints that the record reveals. In 2012, after returning from a medical leave of absence, she has a new supervisor, Mr. White. Mr. White assigns her to work in a separate section of the store from the rest of her team members, whispers to her in ways that make her feel uncomfortable. He uses a boom box in the workplace to play music with vulgar, sexist and misogynist lyrics that are highly offensive to Ms. Jones, some of which include references to oral sex and women's panties on the ground. And again, we're in the workplace here. White tells Ms. Jones to dance for him. Ms. Jones rebuffs him, saying, no, I'm here to work. I'm not here to dance for you. Mr. White threatens her that he's going to run her out of Target. White brags about how many baby mothers he had for about a dozen children, how women fight over him. And other team members brag about their sexual exploits in front of Ms. Jones. Can I ask you, your brief makes a point about Degliati's testimony at the unemployment insurance hearing about a discrepancy about whether he showed the video to your client. I didn't understand the significance of that. The significance of that is where you get to the pretext issue. What evidence do we have of pretext? Okay. The video where she supposedly drops the marijuana wasn't shown to her. The supposed marijuana was never shown to her. The supposed marijuana was thrown out. The defendant has the obligation to offer some proof that, yes, what we reasonably relied on was this. Pretext and the argument that the marijuana was not real or was not the real reason for the termination. Exactly, Your Honor. Exactly. And did you want to reserve some rebuttal time? Yes, I did. Okay. So you reserved two minutes. Do you want to use it now or? Yes, I think I will. Okay. So just getting back to the circumstances. So summer of 2012, Ms. Jones makes her first complaint to Lou Vigliati about White's conduct and his comments. Vigliati responds that he doesn't think White is after her job, but doesn't investigate or take action. Instead, he tells her that she can't bring up any new complaints later. 2013, White begins assigning Jones disproportionately difficult tasks relative to others holding the same position as she did. Jones continues to complain to Vigliati about White's conduct. She offers very specific instances where she believes that she was assigned disproportionately more difficult tasks. Vigliati does nothing other than confirm that those tasks are in her job description. Doesn't ask any of the other managers, is White giving her more than other employees? Doesn't ask any of the other employees, you know, does she handle more of this work than other people do? There were many specific things that he just didn't follow up on in connection with his investigations. Ms. Jones also complained to Vigliati about physical touching by Mr. White. He can't find it on the surveillance video. She said, well, it must have been another date. And this is characterized now that she withdrew that complaint. She never withdrew that complaint. In June of 2013, Jones is subjected to a drug test, which she passes. November of 2013, defendant admits that Jones complains to Vigliati again about offensive conduct by White. Again, his investigation is limited to asking White what happened in the situation. January of 2014, just two months later, not three to 12 months later, two months later, after White assigns her the task of moving 30, 50-pound bags of dog food, she calls the Integrity Hotline. January 26, she's assigned again to disproportionately heavy and less choice work, and White laughs at her, saying, oh, you can't work here anymore, which she then reports to the hotline on January 27, 2014. That hotline complaint also complains of Mr. Vigliati's failure to address her prior complaints. The very next day, Ms. Jones is accused of having dropped a bag of marijuana in front of her locker. The bag is not photographed, cannot be identified as containing marijuana from the surveillance video that you've seen. MS. JONES. Yes, we have your brief, and you've used your rebuttal time. MS. ELNISE ZEBEL. Okay. Thank you, Your Honor. MS. JONES. So I'll turn it over to your adversary. Thank you. MS. ELNISE ZEBEL. May it please the Court, my name is Elnise Zebel. I'm here with my colleague, Dan Kline. We represent Target Corporation. As the Court is aware, we have two very well-reasoned and sound decisions from Magistrate Judge Bloom, as well as the District Court judge, noting that Target had a legitimate business reason for terminating Ms. Jones for violating its drug-free workplace policy, which she acknowledged and signed on December 2007. Her retaliation claim has always been about that she was terminated because she made those complaints. As Your Honor made point, those two complaints were her February 24, 2013 complaint that came one year before her termination. The other complaint was her November 21, 2013 complaint that came months before her termination, both of which were too remote in order to establish causal connection, which the District Court found. The other complaint was the hotline complaint, and that complaint came hours after she had already been confronted about dropping the marijuana. Why isn't there an issue of fact on that? In her deposition, she says she called the hotline first and then was terminated. There were multiple calls, I guess, after the termination, but she does say under oath that her first call to the hotline in this time frame was before she was confronted with the marijuana issue. So why isn't there an issue of fact on that? Because it doesn't matter. Frankly, even if she called before or she called after, how do you prove retaliation, right? She testified in her, she testified in her deposition that the only person who has retaliated against her or discriminated against her was Mr. White. The person who made the termination decision was Mr. Vigliotti as well as Scott Weiss of Asset Protection. Neither Mr. Vigliotti did not know about that hotline complaint until after the fact. And regardless, it doesn't... How do we know that? How do we know? But it doesn't matter because it doesn't take away from the fact that Target had legitimate reason for terminating her. She disputes the reason. She says, I didn't have marijuana, I didn't drop it. The video doesn't suggest, it doesn't conclusively establish I dropped it. So she contests that. So that could be potentially an issue of fact, right? It's not an issue of fact. She admits that she is in the video. She didn't admit that she dropped the marijuana, right? Correct. She didn't admit that she dropped the marijuana. But Target conducted an independent investigation and the investigation revealed that she dropped the marijuana. First of all, the marijuana was discovered by Shadiqa Pride. The jury doesn't necessarily have to accept the employer's view of... But the jury, but there is no evidence whatsoever in the record that the decision that Target came to was based on pretext. She cannot prove that it was based on pretext. Period. She dropped the marijuana. I mean, whether or not she says that she dropped the marijuana, there is video surveillance, right? Shadiqa Pride is a woman, not Mr. White, who discovered that the marijuana was dropped. Shadiqa then goes and gets Mr. White, another employee, takes him back to the locker room. They then escalate the matter to Mr. Vigliotti and Mr. Weiss, who did their own independent investigation. It's not like Mr. Vigliotti just somehow rubber-stamped what Mr. White said. Mr. White didn't even find the marijuana. He didn't even attribute it to Ms. Jones. They, Mr. Vigliotti and Mr. Weiss, reviewed the... That's the argument that she's now making on appeal. She has never made that argument below. And even if that is the case, and I heard that she referenced that there was a complaint in that Integrity Hotline report about Mr. Vigliotti. If you read that report, there's no complaint whatsoever about Mr. Vigliotti. The only mention of Mr. Vigliotti in that report is that he took notes on a complaint that she made in reference to Mr. here. There was an investigation that was done. Whether she wants to say, well, I didn't drop marijuana, they didn't test it, Target is under no obligation whatsoever to run tests to determine whether or not something contained marijuana. The only onus that's on Target is to make sure that the reason that they terminated her was for a legitimate business reason, and that it was not based on pretext. There is no evidence whatsoever in the record here that Target's decision was based on pretext. And there's also the hostile work environment claim here, which counsel addressed. We addressed the issue in our brief. We think it's important to note with respect to that claim that she did not preserve it for appeal, and so it's not properly before this court. That hostile work environment claim, Ms. Jones' counsel has said that the court has considered all of those things in piecemeal and didn't consider the totality of that complaint, although we don't agree that the court should consider it because, like I said, it wasn't preserved for appeal. We do think the district court's decision is sound on that point. The court did consider all of those things, such as moving heavy boxes and the music and the team members dancing, both men and women, considered all of those things and found that they were too remote and they did not have any effect whatsoever on the terms and conditions of her employment. I thank you, Your Honor. Thank you both. We'll take the matter under advisement, and that is the last case to be argued on the calendar, so I'll ask the clerk to adjourn court. Thank you.